UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NIGEL EDWARD JACKSON,

    Plaintiff,

v.                                                       Civil Action No. 3:21-cv-778

EQUIFAX INFORMATION SERVICES, LLC,

    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

    COMES NOW the Plaintiff, NIGEL EDWARD JACKSON ("Mr. Jackson" or "Plaintiff"), by and through his undersigned Counsel, alleges the following against Defendant EQUIFAX INFORMATION SERVICES, LLC:

## PRELIMINARY STATEMENT

    1.    This action arises from Defendant's reporting of adverse, outdated, and inaccurate information in Plaintiff's credit reports.

    2.    Equifax inaccurately reported that Plaintiff owed a debt that he did not. Even if Plaintiff did at one time owe the debt, it was incurred so long ago that it should have been excluded from Plaintiff's credit report because of its age.

    3.    In addition to inaccurately reporting this information, Equifax permitted non-party Financial Management Solutions, Inc. ("FMS") to improperly "re-age" the purported debt, which is a common practice where a creditor or debt collector alters the "date of first delinquency" to make it falsely appear that a debt is new and, thus avoid removal of the debt from consumers' credit reports because of the age of the debt.

1

4. Congress enacted the Fair Credit Reporting Act to prevent this type of misconduct. Finding that consumer reporting agencies "have assumed a vital role" in society, Congress also sought to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681(b).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA. Absent several narrow exceptions, § 1681c prohibits consumer reporting agencies from reporting adverse information that antedates the report by more than seven years. This section of the FCRA "reflects a policy choice to allow dated adverse credit data to 'age off' a credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals." *Beseke v. Equifax Info. Servs*. LLC, No. CV 17-4971 (DWF/KMM), 2019 WL 6250756, at *3 (D. Minn. Nov. 22, 2019) (quoting *Seamans v. Temple Univ*., 744 F.3d 853, 863 (3d Cir. 2014)). To further strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

6. Here, Equifax disregarded these requirements. It allowed FMS to report adverse and outdated information regarding Plaintiff's account, which was more than seven years old. Equifax violated § 1681c because it allowed FMS to re-age the adverse information—past due amounts, and delinquent payment history—that should have been removed from Plaintiff's credit report within seven years as required by the FCRA.

7. Equifax was in possession of the original record that underlies the FMS account, so it easily could have checked the date FMS was reporting against that original record. Yet, Equifax did not.

2

8. If Equifax had reasonable procedures as required by § 1681e(a), it would have discovered that FMS inaccurately listed a date of first delinquency that was incorrect because it was believed to be the same date as the date of judgment for the underlying rental account.

9. The reporting of this debt violated § 1681e(b) of the FCRA, which requires a consumer reporting agency to use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p.

11. Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District and Division.

## PARTIES

12. Plaintiff Nigel Edward Jackson is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

13. Defendant Equifax Information Services, LLC is headquartered in Georgia and does business in the Commonwealth of Virginia through its registered agent.

14. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

15. Non-party FMS is a "furnisher" of information as defined by the FCRA and caselaw interpreting the statute.

## FACTUAL ALLEGATIONS

*The FCRA protects consumers from outdated and inaccurate information*

16. Congress enacted the FCRA with the express purpose of ensuring that consumer reporting agencies "exercise their grave responsibilities" in "a manner which is fair and equitable to the consumer, with regard to confidentiality, accuracy, relevancy, and proper utilization" of credit information. 15 U.S.C. § 1681(a)(4), (b).

17. Although many of the FCRA's provisions focus on accuracy, the FCRA also "aims to protect consumer information by limiting reporting periods for certain types of information to ensure only current and relevant information is disclosed." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1186 (9th Cir. 2019).

18. The FCRA's relevancy requirements, primarily located in § 1681c, accomplish Congress' overarching goal of providing consumers with an opportunity to improve their credit over time. *See* S. Rep. No. 91-517 (1969).

19. Section 1681c prohibits consumer reporting agencies ("CRAs") from furnishing reports containing outdated and stale information. This section prohibits CRAs from including eight categories of information in a consumer report.

20. Relevant here, § 1681c(a)(4) prohibits a CRA from reporting accounts "placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4).

21. Similarly, § 1681c(a)(5) is a catchall provision that prohibits the reporting "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5).

4

22.     To further strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

23.     In addition to these provisions, the FCRA sets out requirements and obligations for consumer reporting and requires that all consumer reports be furnished using "reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b).

24.     Section 1681e(b) imposes a high, and often disregarded, standard on consumer reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064(AJT/TRJ), 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'") (quoting *Webster's Third New Int'l Dictionary* 133, 1396, 1771 (1993)).

### *Equifax allows debt collectors such as FMS to deceptively "re-age" debts as a means of coercing consumers to make payments.*

25.     Because collection accounts are purged from credit reports after seven years, creditors and debt collectors often attempt to "re-age" a debt to make it appear as a newer debt, thereby preventing the aging-off of the debt from the consumer's report. *Born-Again Debt: What Is Re-Aging, and Is It Legal?* (Nov. 13, 2019) (explaining that "[r]e-aging occurs when the "purge from" date on a derogatory account is changed to be more current than the date of the original default, resulting in the account hanging around on your credit reports longer than allowed under the law").

26.     "Not only does the re-aging cause the negative credit report entry to remain on" the consumer's credit report longer than permitted by the FCRA, but it also "will most likely have an

5

unfairly negative impact" on the consumer's credit score because "the item will be interpreted as being more recent and not in the distant past." *Id.*

27. This improper continued reporting of debts unfairly, and by design, pressures consumers into paying debts so that they will stop appearing on their credit and dragging down their credit scores.

28. To re-age a debt, creditors or debt collectors typically change the "date of first delinquency" information, which is one of the standard data entry fields on all credit reports with the "Big 3" consumer reporting agencies.

29. Discovery will show that Equifax has a procedure to suppress the reporting of this information when the date in the "date of 1st delinquency" field antedates the report by more than seven years. In other words, if a creditor requested a copy of a consumer's credit report more than 7.5 years from the "date of 1st delinquency," Equifax's procedures would automatically block the inclusion of the account.

30. To prevent the suppression of the credit information, a creditor or debt collector simply needs to change the date in the "date of 1st delinquency" field to make that event appear newer.

31. Upon information and belief and as reflected by Plaintiff's circumstances, Equifax allows furnishers to select and/or change the date of first delinquency field without providing any explanation or justification for the initial entry or change.

32. Additionally, upon information and belief, Equifax does not have any policy, practice, or procedure to ensure that it detects when a furnisher re-ages a debt even though Equifax knows that it is a prevalent practice from creditors and debt collectors to re-age debts to keep these adverse items on consumers' reports.

33. Even so, in Plaintiff's case Equifax could have easily detected FMS's deception, as Equifax possessed the underlying judgment record, which included the date it was entered, making it simple for Equifax to confirm that FMS had re-aged the debt if Equifax bothered to look.

34. Equifax can also know, again if it looks, that the Consumer Financial Protection Bureau's website shows that more than 40 consumers have lodged complaints against FMS related to "credit reporting" and 66 complaints related to "debt collection."

## *Defendant's Conduct Injured the Plaintiff*

35. Within the past two years, FMS reported adverse information to Equifax about Mr. Jackson. In particular, FMS reported a debt with Station at Potomac Yard, a former landlord of Plaintiff's, with a date of first delinquency of May 2013. In addition, FMS reported what appears to indicate that Mr. Jackson made a $3.00 payment on or about January 30, 2016, leaving a balance owed of $3,361.

36. The date of first delinquency reporting of May 2013, was false. The date of first delinquency to the underlying creditor is around December 2012. Frankly, Mr. Jackson disputes that he even owed the debt because he appeared in Court to contest the matter on or about May 30, 2013, after Station at Potomac Yard sued him over the alleged debt.

37. After Mr. Jackson disputed the account on or about February 24, 2020, Equifax advised him that the FMS account was not reporting on his credit report. Interestingly enough, Equifax had just provided him with a consumer disclosure dated February 19, 2020 that showed the FMS account in its "Collections" section of the disclosure.

38. This information should not have appeared on Mr. Jackson's report because of its age, and Equifax knew the information was too old to include on his report.

7

39. As a result of the inaccurate information Equifax reported about Plaintiff, he has suffered actual damages, including but not limited to loss of credit, damage to reputation, embarrassment, humiliation, lost time in disputing the inaccuracies, and other mental and emotional distress.

40. Plaintiff also sufferd actual damages because of the inaccurate information reported about him that resulted in Plaintiff being unable to secure an apartment at a lower rental rate than he was then currently paying.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of § 1681e(b) of the FCRA

41. The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

42. Equifax willfully violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning the Plaintiff.

43. Equifax reported inaccurate information about the FMS account, as the account should not have included any notation that it was in collection. It was not, as Plaintiff noted to Equifax in his dispute.

44. As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to explain why they lost the ability to benefit from credit.

45. Equifax furnished multiple consumer reports to third parties containing the inaccurate tradeline information and did so after receiving notice of the inaccuracy.

46. Equifax's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

47. As a result of Equifax's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

48. The Plaintiff is entitled to recover his costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### Violation of § 1681c(a) of the FCRA

49. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

50. Equifax reported adverse information that antedated the report by more than seven years in violation of § 1681c of the FCRA.

51. Plaintiff suffered real and actual harm and injury.

52. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Equifax's files and reports.

53. Equifax failed to meet these requirements, reporting information that contracted other information in its possession that showed the true age of the account information FMS supplied to Equifax.

54. Equifax's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.

55.     As a result of Equifax's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

56.     The Plaintiff is entitled to recover his costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

Respectfully Submitted,

NIGEL EDWARD JACKSON,

By: */s/ Craig C. Marchiando*
Leonard A. Bennett, VSB#37523
Craig Marchiando, VSB#89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
Email: craig@clalegal.com